1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ARTHUR JOSEPH McCAULEY, JR.,          No.  2:13-cv-1611-KJN

12                  Plaintiff,

13          v.                             ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                    Defendant.
16

17          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18   ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits ("DIB") and

19   Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social

20   Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that

21   the Commissioner erred by finding that plaintiff was not disabled from March 2, 2008, plaintiff's

22   alleged disability onset date, through the date of the final administrative decision.  (ECF No. 14.)

23   The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary

24   judgment.  (ECF No. 15.)  Thereafter, plaintiff filed a reply brief.  (ECF No. 16.)

25   ////

26   _____

27   [1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and
     both parties voluntarily consented to proceed before a United States Magistrate Judge for all
28   purposes.  (ECF Nos. 7, 8.)

                                                  1

1    For the reasons that follow, the court denies plaintiff's motion for summary judgment,

2    grants the Commissioner's cross-motion for summary judgment, and enters judgment for the

3    Commissioner.

4    I.    BACKGROUND

5          Plaintiff was born on February 20, 1961, obtained a high school education and took some

6    college coursework, and previously worked as a letter carrier and commercial truck driver.[2]

7    (Administrative Transcript ("AT") 21, 34, 36-38.)  On September 26, 2010, plaintiff applied for

8    DIB, alleging that he was unable to work as of March 2, 2008.  (AT 15, 110-13.)  On October 21,

9    2010, plaintiff filed a separate application for SSI alleging the same onset date as his DIB

10   application.  (AT 15, 114-19.)  On February 16, 2011, the Commissioner determined that plaintiff

11   was not disabled.  (AT 15, 66-70.)  Upon plaintiff's request for reconsideration, the determination

12   was affirmed on May 6, 2011.  (AT 76-81.)  Thereafter, plaintiff requested a hearing before an

13   administrative law judge ("ALJ"), which took place on January 11, 2012, and at which plaintiff

14   (represented by counsel) testified.  (AT 34-58, 85-92.)

15         In a decision dated February 9, 2012, the ALJ determined that plaintiff had not been under

16   a disability, as defined in the Act, from March 2, 2008, plaintiff's alleged onset date, through the

17   date of the ALJ's decision.  (AT 15-22.)  The ALJ's decision became the final decision of the

18   Commissioner when the Appeals Council denied plaintiff's request for review on June 10, 2013.

19   (AT 1.)  Thereafter, plaintiff filed this action in federal district court on August 5, 2013, to obtain

20   judicial review of the Commissioner's final decision.  (ECF No. 1.)

21   II.   ISSUES PRESENTED

22         Plaintiff raises the following four issues:  (1) whether the ALJ failed to properly consider

23   Dr. Martin's opinion in assessing plaintiff's residual functional capacity ("RFC"); (2) whether the

24   ALJ erred in not finding plaintiff's diabetes, heart disease, hypertension, and liver disease to be

25   "severe impairments" at Step Two; (3) whether the ALJ improperly considered plaintiff's obesity

26   _____

27   [2] Because the parties are familiar with the factual background of this case, including plaintiff's
     medical and mental health history, the court does not exhaustively relate those facts in this order.
     The facts related to plaintiff's impairments and treatment will be addressed insofar as they are

28   relevant to the issues presented by the parties' respective motions.

2

1  under the standards articulated by Social Security Ruling 02-1p ("SSR 02-1p"); and (4) whether

2  the ALJ made an improper credibility determination with respect to plaintiff's testimony.

3  III.    LEGAL STANDARD

4          The court reviews the Commissioner's decision to determine whether (1) it is based on

5  proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

6  as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

7  evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

8  F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

9  mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

10  Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  "The ALJ is

11  responsible for determining credibility, resolving conflicts in medical testimony, and resolving

12  ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The

13  court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational

14  interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

15  IV.    DISCUSSION

16          A.    Summary of the ALJ's Findings

17          The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard

18  five-step analytical framework.[3]  At the first step, the ALJ concluded that plaintiff had not

19
20  [3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social
Security program. 42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled
21  persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as
an "inability to engage in any substantial gainful activity" due to "a medically determinable
22  physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel
five-step sequential evaluation governs eligibility for benefits under both programs.  See 20
23  C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-
42 (1987).  The following summarizes the sequential evaluation:
24
25      Step one: Is the claimant engaging in substantial gainful activity?  If so, the
        claimant is found not disabled.  If not, proceed to step two.
26
        Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step
27      three.  If not, then a finding of not disabled is appropriate.

28      Step three: Does the claimant's impairment or combination of impairments meet or

engaged in substantial gainful activity since March 2, 2008, plaintiff's alleged onset date.  (AT

17.)  At Step Two, the ALJ determined that plaintiff had the following severe impairments:

"obesity, and sleep apnea."  (Id.)  However, at step three, the ALJ determined that plaintiff did

not have an impairment or combination of impairments that meet or medically equal an

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity

("RFC") for the relevant time period as follows:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform light work as defined in 20
> CFR 404.1567(b) and 416.967(b) except, due to his sleep apnea, he is not able to
> perform any work near hazards (machinery, heights, etc.).

(AT 18.)

At step four, the ALJ found that plaintiff was unable to perform any past relevant work.

(AT 21.)  Finally, at step five, the ALJ determined that, considering plaintiff's age, education,

work experience, and RFC, there were jobs that existed in significant numbers in the national

economy that plaintiff could have performed, including the representative occupations of collator

operator, cleaner, housekeeping, and photocopy machine operator.  (AT 22.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability as defined in

the Act from March 2, 2008, through the date of the ALJ's decision.  (Id.)

////

---

> equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the
> claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past relevant work?  If so, the
> claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any
> other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

> The claimant bears the burden of proof in the first four steps of the sequential evaluation
> process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
> evaluation process proceeds to step five.  Id.

4

B.      Plaintiff's Substantive Challenges to the Commissioner's Determinations

        1.      *Whether the ALJ Failed to Properly Consider Dr. Martin's Opinion in*
              *Assessing Plaintiff's RFC*

First, plaintiff contends that the ALJ erred by crediting the opinion of Dr. Martin, an examining physician, "great evidentiary weight" in support of the ALJ's RFC determination that plaintiff is capable of performing light work, albeit with the restriction that he avoid certain occupational hazards, because the ALJ failed to consider Dr. Martin's statement that placing plaintiff on a "[t]emporary restriction from the workplace pending better control of sleep apnea symptoms seems reasonable and important" when coming to that conclusion.  (AT 291.)

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001), except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999)

1    (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881

2    F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient

3    to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

4              Here, Dr. Martin examined plaintiff on January 23, 2011, and noted that while plaintiff

5    appeared obese and "quite fatigued," he had "[n]o florid difficulty getting on/off the exam table

6    or moving about the [exam room]" and did not need an assistive device to move.  (AT 289.)  Dr.

7    Martin further opined that plaintiff generally exhibited a normal range of motion, aside from

8    plaintiff's ability to squat at only 75% of the full range with difficulty, and that his gait was

9    "grossly normal," with plaintiff exhibiting the ability to walk on both his heels and toes.  (AT

10   291.)  In addition, Dr. Martin opined that plaintiff's strength and motor test results revealed that

11   plaintiff exhibited normal strength and motor capabilities.  (Id.)  Dr. Martin also found that

12   plaintiff possessed the following medical issues: "[o]besity/deconditioned state"; "[o]bstructive

13   sleep apnea apparently with daytime hypersomnolence"; "[d]iabetes meletus"; and

14   "[h]ypertension without objective evidence of associated end-organ damage."  (Id.)  Ultimately,

15   Dr. Martin provided the following opinion:

16              Per DDS guidelines, based on the objective findings and available information at
               the time of this examination, restriction from squatting, walking on grades and the
17             like seem reasonable.  Temporary restriction from the workplace pending better
               control of sleep apnea symptoms seems reasonable and important.  Otherwise, I
18             find no functional restrictions attributable to medical conditions for age-and
               habitus-appropriate activities.  Weight loss would likely be of benefit.  Hazardous
19             tasks should be avoided.

20

21   (AT 291.)

22             As noted above, the ALJ gave Dr. Martin's opinion "great evidentiary weight."  (AT 21.)

23   Plaintiff contends, however, that this was done in error because the ALJ provides no discussion of

24   Dr. Martin's recommendation that plaintiff be placed on a temporary workplace restriction until

25   his sleep apnea is better controlled, which plaintiff claims supports a finding that plaintiff was

26   unable to perform any work rather than the ALJ's finding that plaintiff could perform light work.

27   (ECF No. 14 at 18-20.)  Plaintiff's argument is without merit.  While plaintiff is correct in noting

28   that the ALJ did not dismiss or otherwise discuss Dr. Martin's recommendation that plaintiff be

1   temporarily restricted from the workplace when assessing plaintiff's RFC, the ALJ's failure to

2   mention this finding did not amount to error because Dr. Martin's overall opinion supported the

3   ALJ's RFC determination.

4        When Dr. Martin's clinical findings and overall opinion are taken as a whole, they support

5   the ALJ's conclusion that plaintiff is capable of performing light work with restrictions regarding

6   working around workplace hazards.  As noted above, Dr. Martin opined that plaintiff generally

7   exhibited a largely normal range of motion, aside from difficulty with squatting and walking on

8   grades, exhibited normal strength and motor capabilities, and otherwise had "no functional

9   restrictions attributable to medical conditions for age-and habitus-appropriate activities." (AT

10  291.)  The ALJ's RFC determination that plaintiff could perform "light work" as defined in 20

11  C.F.R. § 404.1567(b) and 20 C.F.R § 416.967(b) is in general accordance with these findings.[4]

12  Furthermore, the ALJ also took into account, and largely adopted, Dr. Martin's opinion regarding

13  the effects sleep apnea had on plaintiff's ability to work by finding that plaintiff's RFC restricts

14  him from work near hazards.  (AT 18.)

15       While Dr. Martin opined that a "[t]emporary restriction from the workplace pending better

16  control of sleep apnea symptoms seems reasonable and important," the ALJ was not bound to

17  adopt this conclusion as his own with respect to determining the ultimate issue of whether

18  plaintiff is disabled within the meaning of the Act.  The determination that a claimant meets the

19  statutory definition of disability is a legal conclusion and is reserved to the Commissioner.  20

20  ───────────────────────

21  [4] "Light work" is defined in both 20 C.F.R. § 404.1567(b) and 20 C.F.R § 416.967(b) as the
    following:

22
          Light work. Light work involves lifting no more than 20 pounds at a time with

23        frequent lifting or carrying of objects weighing up to 10 pounds. Even though the
          weight lifted may be very little, a job is in this category when it requires a good

24        deal of walking or standing, or when it involves sitting most of the time with some
          pushing and pulling of arm or leg controls. To be considered capable of

25        performing a full or wide range of light work, you must have the ability to do
          substantially all of these activities. If someone can do light work, we determine

26        that he or she can also do sedentary work, unless there are additional limiting
          factors such as loss of fine dexterity or inability to sit for long periods of time.

27

28  20 C.F.R. § 404.1567(b); 20 C.F.R § 416.967(b).

1    C.F.R. § 416.927(e); <u>Montijo v. Sec'y of Health & Human Servs.</u>, 729 F.2d 599, 601 (9th Cir.

2    1984) ("The administrative law judge is not bound by the uncontroverted opinions of the

3    claimant's physicians on the ultimate issue of disability . . . .").

4        Furthermore, Dr. Martin's opinion recommended only that plaintiff be *temporarily*

5    restricted from the workplace in order to obtain better control over his sleep apnea symptoms.

6    (<u>see</u> AT 291.)  In order to be considered disabled within the meaning of the Act, a claimant must

7    have the "inability to engage in any substantial gainful activity by reason of any medically

8    determinable physical or mental impairment which . . . which has lasted or can be expected to last

9    for a continuous period of not less than 12 months." 42 U.S.C.. § 423(d)(1).  Here, the ALJ found

10    that Dr. Martin's overall opinion supported the ALJ's determination that plaintiff was not

11    disabled within the meaning of the Act because the ALJ accorded Dr. Martin's opinion "great

12    evidentiary weight" in support of the ALJ's conclusion that plaintiff had the RFC to engage in

13    light work with certain additional restrictions.  Given that Dr. Martin did not provide any

14    timeframe regarding what he meant when he recommended a "temporary restriction" on

15    plaintiff's workplace attendance, it was reasonable for the ALJ to determine, in light of Dr.

16    Martin's other findings, that this recommendation was for a period of time less than the 12

17    months required to find that plaintiff was totally disabled within the meaning of the Act.  <u>Batson</u>

18    <u>v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1193, 1198 (9th Cir. 2004) (citing <u>Andrews</u>, 53

19    F.3d at 1041) ("'[T]he Commissioner's findings are upheld if supported by inferences

20    reasonably drawn from the record . . . . When the evidence before the ALJ is subject to more than

21    one rational interpretation, we must defer to the ALJ's conclusion."); <u>see also</u> <u>Sprague v. Bowen</u>,

22    812 F.2d 1226, 1229-30 (9th Cir. 1987) ("The general rule is that conflicts in the evidence are to

23    be resolved by the Secretary . . . and that the Secretary's conclusion must be upheld where there is

24    more than one rational interpretation of the evidence.").  Consequently, Dr. Martin's opinion

25    supported the ALJ's RFC determination and the ALJ did not err in according that opinion great

26    evidentiary weight.

27    ////

28    ////

2.      Whether the ALJ Erred by Not Finding Plaintiff's Diabetes, Heart
        Disease, Hypertension, and Liver Disease to be "Severe Impairments" at
        Step Two

Next, plaintiff contends that the ALJ erred in his assessment at Step Two because he failed to discuss why plaintiff's Diabetes, Heart Disease, Hypertension, and Liver Disease were not listed as "severe impairments" despite the existence of evidence in the record that plaintiff suffered from these impairments.  (ECF No. 14 at 20-21.)

Under the Commissioner's regulations, an impairment or combination of impairments is deemed to be severe at Step Two if it "significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 404.1521(a).  As the Ninth Circuit Court of Appeals has explained, "the step-two inquiry is a de minimis screening device to dispose of groundless claims.  An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal citations and quotation marks omitted).

Here, the ALJ found that only plaintiff's obesity and sleep apnea were "severe impairments" for purposes of Step Two (AT 17); the ALJ did not discuss whether any of the four impairments mentioned by plaintiff were "severe" for purposes of this step.  Regardless, substantial evidence from the record supported the ALJ's Step Two determination that obesity and sleep apnea were plaintiff's only two impairments sufficiently severe for purposes of Step Two.

For example, Dr. Martin opined that while plaintiff had hypertension, there existed no "objective evidence of associated end-organ damage."  (AT 291.)  Furthermore, during the administrative hearing, plaintiff testified that his blood pressure was "a little high," but was overall "good" and well-controlled with the medications he was taking.  (AT 55.)  Regarding the health of plaintiff's liver, the radiology reports and progress notes from the Veterans Administration hospital indicated that it was "markedly echogenic" in a manner that was "compatible with diffuse hepatocellular disease or fatty infiltration" (AT 335, 358); however,

9

1    nothing in the record suggests that this condition affected plaintiff in a way that significantly

2    limited his ability to perform work-related activities.  With respect to plaintiff's heart condition,

3    the treating notes contain only findings of "mild cardiomegaly" with no evidence of any acute

4    disease; multiple electrocardiograms indicated normal results.  (e.g., AT 189, 211, 256-57, 282-

5    87, 301, 330.)   The record also indicates that while plaintiff was diagnosed with Type-II diabetes

6    in September of 2010, this condition was controlled with medication, plaintiff did not suffer from

7    issues associated with the disease such as retinopathy, and the condition did not restrict plaintiff's

8    ability to do work.  (e.g., AT 250, 299, 312-16.)  Plaintiff further confirmed that his diabetes was

9    well controlled with medication when he testified at the administrative hearing.  (AT 49-50.)

10   Based on this evidence, and the record as a whole, the ALJ properly determined that these four

11   impairments were not sufficiently severe enough to warrant their inclusion at Step Two as "severe

12   impairments" along with plaintiff's obesity and sleep apnea because they did not significantly

13   affect plaintiff's ability to perform basic work activities.

14            Moreover, even assuming arguendo that the ALJ technically erred by not finding  that

15   plaintiff's other impairments individually constituted severe disorders at Step Two, such error is

16   harmless if the ALJ proceeded to consider the effects of that impairment at subsequent steps.  See

17   Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).  Here, because the ALJ found other

18   impairments to be severe at Step Two, the ALJ proceeded to subsequent steps of the sequential

19   disability evaluation process.

20            Plaintiff asserts in his reply that the ALJ's failure to include these impairments at Step

21   Two was not harmless because "there is no indication at any level of the sequential evaluation

22   that these additional impairments were considered or otherwise incorporated into plaintiff's

23   RFC."  (ECF No. 16 at 5.)  Contrary to plaintiff's argument, the ALJ based his RFC assessment

24   upon a careful review of the "all of the evidence" in the record.  (AT 15.)  The record contains

25   references to plaintiff's hypertension, diabetes, heart condition, and liver condition, and it can be

26   reasonably inferred that the ALJ at least "considered" each of these impairments in rendering his

27   decision.  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008).

28   Given the ALJ's consideration of the "all of the evidence" (AT 15) and the amount of testimony

1    the ALJ elicited on all four of these impairments during the hearing (AT 49-50, 55-56), the court

2    infers that the ALJ considered such testimony in assessing plaintiff's RFC.  See Batson v.

3    Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's

4    findings are upheld if supported by inferences reasonably drawn from the record . . . .") (citing

5    Gallant v. Heckler, 753 F.2d 1450, 1452-53 (9th Cir. 1984); e.g., LaFaelle v. Astrue, 2010 WL

6    1286804, at *14-16 (W.D. Wash. March 25, 2010) (unpublished) (upholding ALJ's RFC

7    assessment even though it did not explicitly discuss all impairments plaintiff alleged, because the

8    ALJ discounted several medical opinions offered by plaintiff's physicians, the ALJ's decision

9    "reflect[ed] [the ALJ's] thorough consideration of the medical evidence," and where the RFC

10   "specifically accounted for many of plaintiff's concerns").  Accordingly, even if the ALJ were to

11   have erred by not determining that the impairments plaintiff mentions were severe for Step Two

12   purposes, such an error was, at most, harmless.

13              3.       Whether the ALJ Improperly Considered Plaintiff's Obesity Under the

14                       Standards Articulated by SSR 02-1p

15          Plaintiff's third argument is that the ALJ erred by failing to properly consider his obesity

16   throughout the sequential disability analysis.  In particular, plaintiff asserts that the ALJ

17   improperly discounted the impact plaintiff's obesity had on his sleep apnea and other impairments

18   when the ALJ found that plaintiff's "symptoms . . . could be readily remedied by daily physical

19   exercise and a change in his level of consumption of food that has resulted in significant weight

20   gain.  In short, his symptoms can be alleviated if he changes his sedentary lifestyle."  (AT 20;

21   ECF No. 14 at 23.)  Plaintiff argues that this finding ran contrary to the Ninth Circuit Court of

22   Appeals' holding in Orn v. Astrue, 495 F.3d 625 (9th Cir. 2007), which clarified that "[SSR] 02-

23   1p precludes the ALJ from considering the effect of any failure to follow treatment for obesity"

24   unless the ALJ has already found the claimant to be disabled.  495 F.3d at 637.  Plaintiff's

25   argument is without merit.

26   ////

27   ////

28   ////

SSR 02–1p[5] states that "[o]besity is a complex, chronic disease characterized by excessive accumulation of body fat."  It further states that obesity "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems," and "may also cause or contribute to mental impairments such as depression."  SSR 02-1p also requires an ALJ to consider an individual's obesity at steps two through five of the sequential evaluation, and requires that obesity be considered in combination with the individual's other impairments.[6]  It also states that "[an adjudicator] will not make assumptions about the severity or functional effects of obesity combined with other impairments.  Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment.  [The adjudicator] will evaluate each case based on the information in the case record."  Ninth Circuit case law also requires an ALJ to determine the effect of a claimant's obesity on his or her other impairments.  Celaya v. Halter, 332 F.3d 1177 (9th Cir. 2003).

Here, the ALJ considered plaintiff's obesity throughout the sequential analysis. (AT 17-22.)  For instance, the ALJ found that plaintiff's obesity was a "severe" impairment at Step Two of the sequential analysis.  (AT 17.)  This finding means that the ALJ must have determined that plaintiff's obesity had some material impact on plaintiff's ability to do basic work activities.  See Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) ("An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work" (citations and quotation marks omitted).).  Furthermore, the ALJ considered the effects of plaintiff's obesity at Step

---

[5] SSR 02–1p is available at Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 67 Fed. Reg. 57,859-02 (Sept. 12, 2002).

[6] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy." Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).  Although "SSRs do not carry the 'force of law,' . . . they are binding on ALJs nonetheless.  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009) (citation omitted).  Social Security rulings "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1  Three, finding that its effects on plaintiff's health did not amount to listing-level severity, even

2  when considered in conjunction with plaintiff's other impairments.  (AT 18.)

3        While the ALJ concluded that plaintiff's obesity impacted plaintiff's ability to work

4  insofar as the obesity contributed to the impact of plaintiff's sleep apnea, the ALJ also concluded

5  that plaintiff's obesity did cause any other complications beyond those already identified,

6  specifically noting that there was no evidence in the record of plaintiff's obesity causing

7  peripheral vascular disease or hypertensive cardiovascular disease.  (AT 20.)  The ALJ further

8  determined that plaintiff's physical deconditioning that rendered plaintiff obese could "be

9  remedied by daily physical exercise and a change in his level of consumption of food that has

10  resulted in significant weight gain.  In short, his symptoms can be alleviated if he changes his

11  sedentary lifestyle."  (Id., citing Osenbrock v. Apfel, 240 F.3d 1157 (9th Cir. 2001).)  The ALJ

12  also found that plaintiff's "sleep apnea does not preclude modification of food intake or following

13  a simple home exercise program."  (Id.)

14        Contrary to plaintiff's argument, the ALJ's references to the impact of exercise and other

15  lifestyle changes in his discussion of the effects of plaintiff's obesity on plaintiff's RFC were not

16  made to emphasize the effect of any failure on plaintiff's part to follow treatment for obesity.  In

17  fact, the ALJ's discussion of the impact of plaintiff's obesity with regard to plaintiff's other

18  impairments and overall RFC does not even mention that plaintiff failed to follow such treatment

19  for his obesity.  While the ALJ's discussion of plaintiff's obesity did include the ALJ's sentiments

20  that plaintiff's "symptoms can be alleviated if he changes his sedentary lifestyle" and that

21  plaintiff's obesity could "be remedied by daily physical exercise and a change in his level of

22  consumption of food" (AT 20), the ALJ did not improperly invoke these sentiments in support of

23  reasoning that plaintiff was not disabled because he failed to follow prescribed treatment for his

24  obesity.  Accordingly, plaintiff's reliance on Orn is misplaced insofar as he claims the ALJ

25  improperly considered plaintiff's failure to follow prescribed treatment for his obesity when

26  assessing plaintiff's RFC.[7]

27  _____

28  [7] Plaintiff also asserts that the ALJ improperly addressed plaintiff's obesity under the precedent
set by Orn by citing plaintiff's failure to lose weight as a reason for discrediting plaintiff's

Furthermore, plaintiff fails to point to any evidence of particular functional limitations due to obesity beyond the only ones already addressed by the ALJ that would have materially impacted the ALJ's RFC analysis.  See Burch, 400 F.3d at 682-84 ("Even on appeal, Burch has not pointed to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis.").  As noted above, the ALJ determined that plaintiff's obesity was severe in that it impacted the effects of plaintiff's sleep apnea on his functional capabilities.  While the ALJ's decision could have been more clearly written in this regard, substantial evidence nonetheless supports the ALJ's determination regarding plaintiff's functional limitations.

Based on the record, the ALJ adequately considered plaintiff's obesity in his RFC determination and throughout the five-step evaluation process.  Plaintiff has not set forth, and there is no evidence in the record, of any functional limitations as a result of plaintiff's obesity that the ALJ failed to consider.

> 4.      *Whether the ALJ Made an Improper Credibility Determination with Respect to Plaintiff's Testimony*

Finally, plaintiff argues that the ALJ improperly found plaintiff's testimony not credible. In particular, plaintiff argues that the ALJ's credibility determination was erroneous because the ALJ relied on the following improper reasons to support his finding: (1) plaintiff's failure to lose weight; (2) the purported existence of inconsistencies between plaintiff's reported symptoms and the objective medical evidence in the record; (3) the existence of discrepancies in the record and in plaintiff's testimony regarding plaintiff's alleged onset date; and (4) plaintiff's failure to comply with the prescribed use of this BiPAP machine.  (ECF No. 14 at 25-30.)

A claimant's subjective statements and statements made by laypersons should be considered by the ALJ, but they need not always be accepted as true.  In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit summarized the ALJ's task in assessing a claimant's credibility:

---

testimony.  (ECF No. 14 at 28-29.)  The court addresses this argument below with respect to plaintiff's claim that the ALJ made an improper credibility determination with respect to plaintiff's testimony.

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. [But t]he claimant … need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only be offering specific, clear and convincing reasons for doing so….

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).

However, "the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The "ALJ must … identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider the claimant's reputation for truthfulness, inconsistencies in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. Id. at 959.

Neither the ALJ nor the Commissioner cited to evidence of malingering in the record, and there appears be none, so the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. Accordingly, the ALJ gave the following reasons for finding plaintiff's testimony not credible:

> [T]he medical record shows that [plaintiff's] physical deconditioning that renders him obese and having alleged symptoms of pain and limited movement

15

1   could readily be remedied by daily physical exercise and a change in his level of
2   consumption of food that has resulted in significant weight gain. . . .

3   Among other factors, [plaintiff's] range of motion, sensation, reflexes, and
    motor functioning were normal.  Yet [plaintiff] reported very limited daily
4   activities.

5   [Plaintiff] alleges disability since March 2, 2008, yet he told Dr. Martin
    that he had just been diagnosed in 2010 (six months before his consultative exam)
6   with his alleged impairments. . . .

7   [Plaintiff] has not been wholly compliant in using his BiPAP machine even
    though to date it has been his most viable treatment modality.
8

9   (AT 20-21.)

10      As an initial matter, plaintiff argues that the ALJ's finding plaintiff not credible on the

11  basis that his symptoms associated with obesity could be remedied with a change in diet and

12  exercise habits violates the Ninth Circuit Court of Appeals' holding in Orn that an ALJ may not

13  base his or her credibility determination on the fact that a claimant failed to follow treatment for

14  obesity.  See Orn, 495 F.3d at 636-38.  While the ALJ appears to have based his credibility

15  determination in part on the basis that plaintiff's obesity "could readily be remedied by daily

16  physical exercise and a change in his level of consumption of food that has resulted in significant

17  weight gain" (AT 20), to the extent that this basis for the credibility determination violated Orn,

18  there are sufficient remaining grounds for the credibility determination.  Batson, 359 F.3d at 1197

19  ("Any error the ALJ may have committed . . . was in our view harmless and does not negate the

20  validity of the ALJ's ultimate conclusion that Batson's testimony was not credible."); Carmickle,

21  533 F.3d at 1162 (if one of the ALJ's reasons is invalid, the question is whether the ALJ's

22  decision remains legally valid, despite such error, based on the ALJ's "remaining reasoning and

23  ultimate credibility determination.")  Accordingly, for the reasons stated below, to the extent the

24  ALJ's reasoning was in error for considering plaintiff's inability to lose weight as a reason for

25  dismissing plaintiff's testimony, it was, at most, harmless.

26      The ALJ's next stated reason for finding plaintiff's testimony not credible is that

27  plaintiff's testimony regarding his daily activities conflicted with the objective medical evidence

28  in the record regarding plaintiff's physical functional capacity.  (AT 21.)  During the

16

1    administrative hearing, plaintiff testified that he engaged in only a very limited range of living

2    activities.  For instance, plaintiff testified that he would once a week walk the distance of the

3    driveway of his apartment complex, which would take him about fifteen minutes to complete.

4    (AT 46.)  Plaintiff also testified that he did not do laundry, change his bed's sheets, cook,

5    vacuum, ride a bicycle, scrub the bathroom shower, mop the floor, or do any yard work.  (AT 43-

6    46.)  Plaintiff further testified that the only exercise he was able to do were some unspecified

7    swimming pool exercises and that he attempted to play tennis with his fiancé on four different

8    occasions over the course of a two week period, but that each attempt resulted in him just hitting

9    balls to his fiancé so that she could retrieve them for him.  (AT 46.)  When asked what he did as a

10   hobby, plaintiff testified "I do nothing."  (AT 47.)  The ALJ determined that this testimony

11   conflicted with plaintiff's medical records showing that plaintiff exhibited normal range of

12   motion, sensation, reflexes, and motor functioning.  (AT 21.)

13           Plaintiff argues that the ALJ's determination was in error because it did not take into

14   account plaintiff's sleep apnea, which is the main impairment underlying plaintiff's claim that he

15   is disabled.  (ECF No. 14 at 30.)  However, plaintiff's argument is without merit.  The ALJ was

16   not required under the relevant legal standard to find that the medical record conflicted with

17   plaintiff's testimony concerning that particular alleged impairment in order to properly find

18   plaintiff's testimony not credible.  Rather, the ALJ needed only to point to a specific conflict

19   between plaintiff's testimony and the medical record that is substantial enough to throw plaintiff's

20   credibility into doubt.  See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.

21   1999) ("Citing the conflict between Morgan's testimony of subjective complaints and the

22   objective medical evidence in the record . . . the ALJ provided specific and substantial reasons

23   that undermined Morgan's credibility.").  Here, the ALJ did cite to a specific and substantial

24   conflict between plaintiff's testimony and the medical record.  Indeed, the medical evidence

25   regarding plaintiff's physical capabilities appears to conflict with plaintiff's claims that he does

26   not do household chores and other activities because of his impairments.  For instance, Dr. Martin

27   noted that, outside of an apparent difficulty with squatting, plaintiff had a largely normal range of

28   motion, gait, strength, and motor skills for someone his age.  (AT 289-91.)  In addition, Dr. Yee,

1   a consulting physician, provided an assessment of plaintiff's RFC, noting that plaintiff could lift

2   20 pounds occasionally and 10 pounds frequently, could sit, stand, walk about 6 hours in an 8

3   hour day, had an unlimited ability to push and pull objects, and had no other major limitations

4   beyond a recommendation that plaintiff stay away from working near hazards.  (AT 292-96.)

5   These functional assessments all suggest that plaintiff's impairments restricted plaintiff far less in

6   his ability to do work and other activities than what plaintiff testified he was limited to doing in

7   his daily living activities.  Accordingly, the ALJ did not err by finding plaintiff not credible on the

8   basis that plaintiff's testimony concerning his living activities conflicted with certain objective

9   medical findings in the record.

10          Next, the ALJ found plaintiff not credible because plaintiff alleges a disability onset date

11   of March 2, 2008, but told Dr. Martin during his consultative examination on January 23, 2011,

12   that he had just been diagnosed with his alleged impairments six months prior to that

13   examination.  (AT 21.)  Plaintiff asserts that this reason was also insufficient to find plaintiff not

14   credible because it is unclear which impairments Dr. Martin referred to in his report and because

15   other evidence in the record suggests that plaintiff's impairments, particularly his sleep apnea,

16   had been diagnosed as many as ten years prior to Dr. Martin's examination.  (ECF No. 14 at 29.)

17   These arguments are not well-taken.

18          First, Dr. Martin's examination notes make it clear that he was referring to plaintiff being

19   diagnosed with diabetes, high blood pressure, and sleep apnea when he stated in his January 23,

20   2011 report that "[plaintiff] reports being diagnosed with the above about six months ago after

21   seeking urgent attention . . . for 'chest pain.'"  (AT 280.)  Second, while the evidence in the

22   record suggests that plaintiff may have suffered from sleep apnea as far back as ten years prior to

23   Dr. Martin's examination (see e.g., AT 274), this does not make the ALJ's reliance on the

24   inconsistency between plaintiff's testimony concerning his alleged disability onset date and what

25   plaintiff told Dr. Martin regarding when he was diagnosed with these conditions erroneous.  An

26   ALJ may rely on inconsistencies in the claimant's testimony and his prior statements or behavior

27   as support for finding the claimant's testimony not credible.  See Verduzco v. Apfel, 188 F.3d

28   1087, 1090 (9th Cir. 1999)  ("The ALJ pointed out several areas in which the appellant's

1   testimony or behavior was inconsistent with his own statements or actions, as well as with the

2   medical evidence . . . Thus the ALJ discounted the appellant's testimony because he found it to be

3   unbelievable in general.").  While finding a single inconsistency between plaintiff's testimony

4   and what he told one of his doctors was, by itself, insufficient to generally discredit plaintiff's

5   testimony, see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 884 (9th Cir. 2006) ("While

6   conflicting or inconsistent testimony concerning alcohol use can contribute to an adverse

7   credibility finding, . . . in this case it cannot justify such a finding alone and without further

8   corroboration or explanation." (citation omitted)), the ALJ's noting that plaintiff's testimony

9   regarding his alleged onset date was inconsistent with what he told Dr. Martin was still a

10  legitimate reason in support of his finding plaintiff not credible and, therefore, was not in error.

11       Finally, the ALJ found plaintiff not credible for the reason that plaintiff was not wholly

12  compliant with using his prescribed BiPAP breathing machine as directed.  (AT 21.)  Plaintiff

13  argues that this reasoning was in error because the record shows that plaintiff repeatedly made

14  attempts to use his BiPAP machine as prescribed when he slept, but was consistently unable to

15  stay asleep because his use of the machine purportedly caused him to suffer anxiety attacks,

16  nightmares, and claustrophobia.  (ECF 14 at 27-28.)  This argument is also without merit.

17       The claimant's "unexplained or inadequately explained failure to seek treatment or to

18  follow a prescribed course of treatment" is a specific and legitimate reason for finding the

19  claimant not credible.  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); cf. 20 C.F.R.

20  § 404.1530 ("If you do not follow the prescribed treatment without a good reason, we will not

21  find you disabled . . .").  Here, substantial evidence in the record supports the ALJ's finding that

22  plaintiff's failure to consistently use his BiPAP machine as prescribed constituted a specific and

23  legitimate reason for discounting plaintiff's testimony.  Plaintiff's medical records clearly show

24  that he did not consistently use his BiPAP machine as prescribed.  For example, plaintiff only

25  used the machine for roughly two to three hours each night despite the fact that his doctors

26  stressed the importance of using the machine when he slept.  (AT 229, 332, 349, 374.)  Plaintiff

27  also told his doctors that he did not use his BiPAP machine when he took naps.  (AT 374.)

28  ////

1    Furthermore, substantial evidence in the record shows that plaintiff's purported reasons

2    for not fully complying with his doctors' orders that he use the BiPAP machine on a regular basis

3    when trying to sleep were inconsistent and inadequately explained plaintiff's failure to use the

4    device as prescribed.  For instance, the evidence shows that plaintiff sometimes told his doctors

5    that he could not use the BiPAP machine because it would cause him to wake up in a panic

6    thinking that it keeping him from breathing (AT 323-24), while, on other occasions, he told his

7    doctors that he could not use the machine because it caused him to suffer from "vivid nightmares"

8    about "murder and death" (AT 349, 353).  Separate from the occasions where he would give the

9    doctors one of these two reasons for not using the BiPAP as prescribed, plaintiff told his doctors

10   that he would put the machine on when he went to bed, but when he "wakes up in [the] morning .

11   . . it is on the floor" without providing a reason for why he removed the machine during the night.

12   (AT 374.)  In January of 2011, plaintiff received a new mask for his BiPAP machine and told his

13   doctors that the new mask was more comfortable to use.  (AT 332.)  However, plaintiff continued

14   to not use the machine more than a few hours per night and continued to complain that the

15   machine caused him to experience anxiety attacks.  (AT 349, 374.)

16       The ALJ's credibility determination was supported by several specific and legitimate

17   reasons for rejecting plaintiff's testimony.  Accordingly, the ALJ did not err in finding plaintiff

18   not credible.

19   V.    CONCLUSION

20       For the foregoing reasons, IT IS HEREBY ORDERED that:

21       1.  Plaintiff's motion for summary judgment (ECF No. 14) is DENIED.

22       2.  The Commissioner's cross-motion for summary judgment (ECF No. 15) is

23   GRANTED.

24       3.  Judgment is entered for the Commissioner.

25       4.  The Clerk of Court is directed to close this case and vacate all dates.

26       IT IS SO ORDERED.

27   Dated:  September 19, 2014

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

28